



**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

Connecticut Financial Center          (203)821-3700
157 Church Street, 25th Floor          Fax (203) 773-5376
New Haven, Connecticut 06510          www.justice.gov/usao/ct

February 6, 2018

Daniel E. Wenner, Esq.
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103

      Re:   United States v. Diane Dalmy
             Case No. 3:18CR 2\ (JAM)

Dear Attorney Wenner:

      This letter confirms the plea agreement between your client, Diane Dalmy (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal matter.

## THE PLEA AND OFFENSE

      The defendant agrees to waive her right to be indicted and to plead guilty to a one-count information charging a violation of 18 U.S.C. § 371.

      The defendant understands that, to be guilty of this offense, the following essential elements of the offense must be satisfied:

      1.   An unlawful agreement existed between two or more individuals to commit wire fraud, in violation of 18 U.S.C. § 1343;

      2.   The defendant knowingly and willfully entered that conspiracy;

      3.   One of the members of the conspiracy knowingly committed at least one of the overt acts charged in the information; and

      4.   The overt acts were committed to further some objective of the conspiracy.

*February 6, 2018 Letter to Attorney Daniel E. Wenner*
*Page 2*

## THE PENALTIES

### Imprisonment

This offense carries a maximum penalty of five years of imprisonment.

### Supervised Release

In addition, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should she violate any condition of supervised release, she may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

### Fine

This offense carries a maximum fine of $250,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

### Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on the count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

### Restitution

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

The defendant reserves her right to argue that the Court should apportion restitution between her and any other defendants convicted of participating in the underlying wire fraud scheme, pursuant to 18 U.S.C. § 3664(h). The Government reserves the right to take whatever position it deems appropriate as to apportionment. The defendant understands that if the Court denies her application

for apportionment under 18 U.S.C. § 3664(h), she will not be entitled to withdraw her plea of guilty.

### Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (*i*) and § 3612(g).

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that she has no right to withdraw her guilty plea if her sentence or the Guideline application is other than she anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and her offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on her prompt notification of her intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2)

truthfully disclosing to the United States Attorney's Office and the United States Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw her guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that she may not withdraw her plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The parties agree that the defendant's base offense level under U.S.S.G. § 2B1.1(a)(2) is 6, and that a two-level enhancement applies under U.S.S.G. § 3B1.3 based on the defendant's abuse of a position of trust and/or her use of a special skill.

In addition, the Government takes the position that the actual loss resulting from the offense that was reasonably foreseeable to the defendant was $10,725,254 and, hence, that a 20-level enhancement applies under U.S.S.G. § 2B1.1(b)(1)(K). The defendant reserves the right to oppose the Government's loss calculation and to advocate for any alternate measure of loss she believes the Court should adopt.

The Government also takes the position that two levels should be added because the offense involved 10 or more victims and/or was committed through mass marketing, U.S.S.G. § 2B1.1(b)(2)(A), and that an additional two-level enhancement applies because the offense involved sophisticated means, U.S.S.G. § 2B1.1(b)(10). The defendant reserves the right to oppose either or both of these enhancements.

The parties agree that three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above.

The Government thus calculates the defendant's total offense level to be 29. The defendant reserves the right to oppose the Government's total offense level calculation and to advocate for any alternate calculation she believes the Court should adopt.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level of 29 (as calculated by the Government), assuming a Criminal History Category I, would result in a range of 87 to 108 months of imprisonment (sentencing table) and a fine range of $30,000 to $250,000, U.S.S.G. § 5E1.2(c)(3). However, because the statutory maximum sentence for the offense of conviction is 60 months of imprisonment, the defendant's effective Guidelines sentence is 60 months of imprisonment (under the Government's calculation). U.S.S.G. § 5G1.1(a).

The defendant is also subject to a supervised release term of one year to three years. U.S.S.G. § 5D1.2.

The defendant understands that the Court is not bound to accept whatever Guidelines calculation or sentencing recommendation she advocates. The defendant further understands that she will not be permitted to withdraw her guilty plea if the Court imposes a sentence outside of the Guidelines range as calculated by the defendant.

*February 6, 2018 Letter to Attorney Daniel E. Wenner*
*Page 6*

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated or advocated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

<u>Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence</u>

The defendant acknowledges that under certain circumstances she is entitled to challenge her conviction and sentence. The defendant agrees not to appeal or collaterally attack her conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. Nor will she pursue such an appeal or collateral attack to challenge the sentence imposed by the Court if that sentence does not exceed 60 months of imprisonment, a three-year term of supervised release, a $100 special assessment, a fine of $250,000, and restitution in the amount of $10,725,254, even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. The defendant acknowledges that she is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentence that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

<u>Information to the Court</u>

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

*February 6, 2018 Letter to Attorney Daniel E. Wenner*
*Page 7*

## WAIVER OF RIGHTS

### Waiver of Right to Indictment

The defendant understands that she has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that she committed the offense set forth in the information before an indictment could be returned. The defendant acknowledges that she is knowingly and intelligently waiving her right to be indicted.

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent her.

The defendant understands that she has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against her, the right not to be compelled to incriminate herself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in her defense. The defendant understands that by pleading guilty she waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if she pleads guilty, the Court may ask her questions about each offense to which she pleads guilty, and if she answers those questions falsely under oath, on the record, and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that she is entering into this agreement and is pleading guilty freely and voluntarily because she is guilty. The defendant further acknowledges that she is entering into this agreement without reliance upon any discussions between the Government and her (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges her understanding of the nature of the offense to which she is pleading guilty, including the penalties provided by law. The defendant also acknowledges her complete satisfaction with the representation and advice received from her undersigned attorney. The defendant and her undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to her with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving her.

## COLLATERAL CONSEQUENCES

The defendant understands that she will be adjudicated guilty of each offense to which she has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if she is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which she is licensed, or with which she does business, as well as any current or future employer of the fact of her conviction.

*February 6, 2018 Letter to Attorney Daniel E. Wenner*
*Page 9*

In addition, before the time of sentencing in this case, the defendant agrees to petition the Colorado Supreme Court to permit her to resign from the practice of law.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of her participation in the conduct which forms the basis of the information in this case.

The defendant understands that if, before sentencing, she violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw her guilty plea.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

JOHN H. DURHAM
UNITED STATES ATTORNEY


AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY

*February 6, 2018 Letter to Attorney Daniel E. Wenner*
*Page 10*

    The defendant certifies that she has read this plea agreement letter and its attachment(s) or has had it read or translated to her, that she has had ample time to discuss this agreement and its attachment(s) with counsel and that she fully understands and accepts its terms.

_____         2/6/18
DIANE DALMY                                 _____
The Defendant                                 Date

    I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that she understands and accepts its terms.

_____         2/6/18
DANIEL E. WENNER, ESQ.                 _____
Attorney for the Defendant               Date

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to the information:

The defendant was an attorney who was licensed to practice law in Colorado and who specialized in securities law. The defendant served as securities counsel for, and otherwise performed securities-related legal work on behalf of, several public companies, including Mammoth Energy Group, Inc. ("Mammoth"), a company that later became known as Strategic Asset Leasing Inc. ("Lease"); and Fox Petroleum, Inc. ("Fox") (collectively, the "Subject Companies").

Between approximately January 2009 and July 2016, the defendant knowingly and willfully conspired with others to execute a wire fraud scheme to defraud investors who purchased stock issued by the Subject Companies. The defendants' co-conspirators included William Lieberman and, later, Christian Meissenn. During the course of the conspiracy, the defendant acted largely at Lieberman's direction.

The defendant knew and understood that the Subject Companies were under the control of Lieberman and others. The defendant knew or should have known that Lieberman, Meissenn, and others (the "Co-Conspirators") had been and were running fraudulent stock promotions for the Subject Companies. In a typical promotion, the Co-Conspirators disseminated materially false, positive information about one or more of the Subject Companies through press releases, email marketing blasts, hardcopy mailers, and telephone solicitations, as well as by incorporating the misleading information into the company's public filings. After the hype led to artificially-inflated share prices for the company's stock, the Co-Conspirators sold their own large positions in the stock at a profit. They then ended the promotion and allowed the share price to plummet, leaving investors holding worthless and unsalable stock. The defendant never owned or sold any stock in any of the Subject Companies.

The defendant participated in the conspiracy by writing, and permitting Lieberman to write in her name, fraudulent opinion letters that were used to unrestrict the Co-Conspirators' stock so that the stock could be freely traded on the open market (without having to register the stock with the Securities and Exchange Commission). These letters were intended to, and did, permit the Co-Conspirators to sell their shares at times of their choosing, including to coincide with their fraudulent stock promotion campaigns, without concern for the time restrictions, notice requirements, and other provisions of the federal securities laws and regulations, and in particular 17 C.F.R. § 230.144 (also known as "Rule 144"). The defendant's opinion letters were materially false in various respects, including

as to whether the issuing company was a shell company, whether the shareholder was an affiliate of the issuer, whether the transactions described in the letters actually had occurred, and whether the defendant had performed the due diligence that she described in the letters.

The defendant also ghost-wrote fraudulent opinion letters for the Subject Companies in another attorney's name (referred to in the information as "Attorney 1"), and permitted Lieberman to do so. These included four "adequacy" letters that were posted on a website maintained by an electronic securities marketplace in 2010. In general, an "adequacy" letter accompanies a public filing by an issuer and states that, after appropriate investigation, it is the authoring attorney's opinion that adequate current information about the issuer is publicly available for investors to review. Hence, this type of opinion letter might be relied upon by investors in making their discretionary investment decisions. In certain instances, the defendant ghost-wrote letters that Attorney 1 placed onto his letterhead and signed. In one other instance, the defendant and Lieberman wrote the opinion letter in Attorney 1's name without the knowledge and consent of Attorney 1. In all instances, the letters were materially false in various respects, including as to whether the issuing company was a shell company, whether the defendant (or Attorney 1) had performed the due diligence described in the letters, and whether adequate current information about the issuer was publicly available for investors to review.

The defendant also participated in the conspiracy by providing the Co-Conspirators with capital. The defendant provided the capital based on the ongoing requests of the Co-Conspirators. The defendant knew or should have known that the Co-Conspirators would not use these funds for legitimate purposes. The defendant provided the capital by advancing money from her Lawyer Trust Account ("IOLTA"). These funds belonged to other clients of the defendant's law practice. The clients did not know that their funds had been advanced to the Co-Conspirators by the defendant.

Finally, between February 2015 and July 2016, the defendant also laundered a portion of the proceeds of the wire fraud scheme on behalf of the Co-Conspirators. The defendant helped Lieberman to incorporate and open bank accounts for a private company, Queen Asia Pacific Ltd. ("Queen Asia"), which was controlled by Lieberman. These bank accounts were used to receive proceeds of the scheme from a brokerage account in Queen Asia's name. The defendant knew or should have known that the money received in Queen Asia's bank accounts was the proceeds of a stock promotion scheme. The defendant periodically received money in Queen Asia's bank accounts, transferred those funds to her IOLTA, and then transferred the funds again to Lieberman, Meissenn, and others at Lieberman's instruction. As the defendant knew and understood, this two-step process helped to conceal the source and recipients of the funds. In total, the defendant laundered approximately

*February 6, 2018 Letter to Attorney Daniel E. Wenner*
*Page 13*

$825,000 on behalf of the Co-Conspirators through Queen Asia's bank accounts and the defendant's IOLTA. The defendant's total gain from her participation in the conspiracy, and related legal work for the Subject Companies, was approximately $30,000 over more than seven years.

    As described in the information, in furtherance of the underlying wire fraud scheme, the defendant and the Co-Conspirators sent and caused to be sent interstate wires, including emails, telephone calls, and money wires into and out of Connecticut from other states. Moreover, the defendant or one of the Co-Conspirators knowingly committed the overt acts charged in the information and did so in order to further the object of the conspiracy.

    This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.


DIANE DALMY
The Defendant

AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY


DANIEL E. WENNER, ESQ.
Attorney for the Defendant

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A as follows:

1.  If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

    A.  Return the property to the owner of the property or someone designated by the owner; or

    B.  If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

        The greater of -
        (I) the value of the property on the date of the damage, loss, or destruction; or

        (II)the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614. The Court may also order that the defendant give notice to any victim(s) of her offense under 18 U.S.C. § 3555.