## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

v.

DIANE DALMY,
*Defendant.*

No. 3:18-cr-00021 (JAM)

### ORDER GRANTING GOVERNMENT'S MOTION FOR TURNOVER

Diane Dalmy is a former prisoner of the Federal Bureau of Prisons. As part of her sentence, Dalmy was ordered to pay $2 million in restitution. The Government has moved for an order directing Dalmy to turn over cash-on-hand and cashier's checks totaling $20,500. For the reasons set forth below, I will grant the Government's motion for turnover.

### BACKGROUND

On February 6, 2018, Dalmy pleaded guilty to a charge of conspiracy to engage in wire fraud in violation of 18 U.S.C. § 371.[1] The Court sentenced Dalmy principally to a term of three years of imprisonment, to be followed by three years of supervised release.[2] The Court also ordered Dalmy to pay restitution of $2 million.[3]

After sentencing, the Court entered a separate Restitution Order specifying that "[t]he total amount of restitution is due and payable immediately pursuant to 18 U.S.C. § 3572(d)(1) . . . upon entry of this judgment."[4] Dalmy was also required to "notify the Court, the United States Probation Office (during any period of probation or supervised release), and the United States

---

[1] Docs. #4, #10.
[2] Docs. #19, #21.
[3] Docs. #21, #22.
[4] Doc. #22 at 3.

Attorney's Office, of any material change in [her] economic circumstances that might affect [her] ability to pay restitution."[5]

Less than a year later, the Court granted the Government's motion for resentencing after concluding that Dalmy knowingly and willfully failed to pay restitution by failing to disclose $47,000 in cash.[6] *See United States v. Dalmy*, 2018 WL 5817158 (D. Conn. 2018). The Court resentenced Dalmy principally to a term of five years of imprisonment, with all other aspects of her sentence remaining the same.[7]

While Dalmy was incarcerated, she had over $1,000 in her inmate trust account.[8] On the Government's motion, and absent objection, a portion of those funds was applied to Dalmy's restitution debt.[9]

Dalmy was released to a halfway house in October 2021, and she began her term of supervised released in the District of Colorado in January 2022.[10] During a home visit, the United States Probation Officer confirmed that Dalmy had $1,500 in cash-on-hand and four cashier's checks totaling $19,000.[11] The cashier's checks were drawn while Dalmy was in custody at the halfway house.[12] As of September 2023, Dalmy still owed $1,917,303.47 in restitution.[13]

---

[5] *Id.* at 5.
[6] Doc. #42.
[7] Doc. #54.
[8] Doc. #67-1 at 2.
[9] Docs. #67, #72.
[10] Docs. #113-1 at 2.
[11] *Ibid.* The parties dispute whether this visit occurred in March or May 2023. *Compare ibid.* (May 4, 2023), *with* Doc. #116 at 4 (¶ 9) (March 31, 2023). But this difference in dates is immaterial to my ruling.
[12] Doc. #113-1 at 2.
[13] *Ibid.*

The Government has moved for the issuance of an order directing Dalmy to turn over cash-on-hand and cashier's checks totaling $20,5000.[14] Dalmy opposes the entry of such an order.[15] This ruling now follows.

## DISCUSSION

The Mandatory Victims Restitution Act of 1996 ("MVRA") provides, in relevant part, that upon notice "of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution," the Court "may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k).

Here, the Government claims that the $20,500 in Dalmy's possession represents a "material change" and that Dalmy failed to notify the Court in accordance with the governing statute and Restitution Order.[16] Dalmy disagrees, arguing that there was no such change because these funds were withdrawn from her previously disclosed individual retirement account ("IRA").[17]

But Dalmy's previous disclosure makes no difference. Consider *United States v. Gilmartin*, where the Second Circuit found that a defendant's election to receive Social Security benefits after his release from prison "satisfie[d] the statutory test for a 'material change in the defendant's economic circumstances.'" 803 F. App'x 538, 539 (2d Cir. 2020) (quoting 18 U.S.C. § 3664(k)); *see United States v. Grant*, 235 F.3d 95, 100–01 (2d Cir. 2000) (reaching the same conclusion where the defendant's inmate account was "frozen" and "not accessible" during the

---

[14] Doc. #113; *see* Doc. #119.
[15] Docs. #116, #123.
[16] Doc. #113-1 at 3–4, 8; *see* Doc. #22 at 5.
[17] Doc. #116 at 2–3 (¶¶ 4, 6), 6 (¶ 14).

prosecution but later became "unfrozen").[18] Even though the "Defendant had the *right* to collect Social Security benefits at the time of sentencing, those funds became available to Defendant only once he *elected* to receive them *after* sentencing," rendering the question of his earlier disclosure "immaterial." *United States v. Gilmartin*, 2018 WL 2059650, at *3 (S.D.N.Y. 2018).

These facts are analogous to Dalmy's liquidation of her IRA. Although she disclosed the IRA prior to sentencing, Dalmy only elected to withdraw the funds after her release from prison. When Dalmy liquidated her IRA, the "change in the availability of funds after sentencing constitute[d] a 'material change' under § 3664(k)." *Ibid.*

Nor does it matter that Dalmy paid into her IRA over an extended period of time in order to accumulate these funds.[19] Dalmy did not gradually withdraw funds from her IRA—she took out $75,412 in one fell swoop.[20]

But even if the focus was on her piecemeal IRA deposits, I am persuaded by the reasoning of other courts that the gradual accumulation of funds does not prohibit the finding of a material change. *See United States v. Moglia*, 573 F. Supp. 3d 850, 854 (E.D.N.Y. 2021); *see also United States v. Giles*, 819 F. App'x 899, 900 (11th Cir. 2020) (*per curiam*). Accordingly, I find that Dalmy's liquidation of her IRA was a "material change" within the meaning of § 3664(k) and that the interests of justice require granting the Government's motion for turnover.

---

[18] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[19] Doc. #123 at 7 (¶ 14).
[20] Doc. #116 at 3 (¶ 6).

## CONCLUSION

For the reasons set forth above, the Court GRANTS the Government's motion for turnover (Doc. #113). The defendant shall turn over the funds to her U.S. Probation Officer or other designated representative of the U.S. Attorney's Office within 30 days of this order.

It is so ordered.

Dated at New Haven this 31st day of July 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge